IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BARBARA R. BOERGER, )
)
    Plaintiff, )
)
    vs. ) Civil Action No. 2:16-1095
)
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security,[1] )
)
    Defendant. )
)

AMBROSE, Senior District Judge

**OPINION**
**and**
**ORDER OF COURT**

**SYNOPSIS**

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 10 and 14]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 11 and 15]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, Defendant's Motion [ECF No. 14] is denied and Plaintiff's Motion [ECF No. 10] is granted.

**I. BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). Plaintiff applied for SSI on or about July 2, 2013. [ECF No. 8-4, at 77]. In her application, she alleged that she was disabled due to

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

depression, headaches, and hydrocephalus, and that she had been unable to work since April 1, 2010. Id. at 66. Administrative Law Judge ("ALJ") Alma de Leon held a hearing on October 14, 2014, at which Plaintiff was represented by Barbara S. Manna, a non-attorney representative. [ECF No. 8-3, at 38-65]. Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 61-65. In a decision dated October 28, 2014, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. ECF No. 8-2, at 23-32. On, June 8, 2016, the Appeals Council denied Plaintiff's request for review. Id. at 1-5. Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 10 and 14]. The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Determining whether substantial evidence exists is "not merely a quantitative exercise." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." Id. The Commissioner's findings of fact, if supported by substantial

2

evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. § 416.920. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts

to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

### B. Headaches and Listing 11.03

At step two of the analysis, the ALJ found that Plaintiff had severe impairments, including headaches, vertigo, lateral nystagmus, major depressive disorder with psychotic features, and post-traumatic stress disorder. [ECF No. 8-2, at 25]. At step three of the analysis, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 25-26. In particular, the ALJ found that Plaintiff's lateral nystagmus did not meet any of the visual listings set forth at 2.02, 2.03, 2.04, or 2.07; and that Plaintiff's mental impairments did not meet or medically equal the criteria of Listings 12.04 and 12.06. Id. The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except with the following limitations: the claimant is able to lift up to 20 pounds occasionally, and lift/carry up to 10 pounds frequently, while standing and walking for about 6 hours, except that she can only occasionally climb ladders, ropes, scaffolds, remaps, or stairs and only occasionally balance. She also must avoid all exposure to extreme cold, excessive vibration and hazards, such as moving machinery and unprotected heights. The RFC finding further limited Plaintiff to occupations that do not require reading small print; and to routine, repetitive tasks performed in a work environment free from fast-paced production requirements, involving only simple work-related decisions, and routine workplace changes. Finally, work must be isolated from the

public, with only occasional supervision and only occasional interaction with co-workers. Id. at 26-32.

Plaintiff argues that the ALJ erred in determining that Plaintiff's headaches were "severe," but then failing to analyze her headaches at step 3 of the analysis. Although Plaintiff admits that there is no Listing that specifically pertains to headaches, she claims that the ALJ should have considered whether her headaches medically equaled Listing 11.03, which addresses non-convulsive epilepsy. ECF No. 11 at 5-7. In support, Plaintiff cites Social Security Administration National Q&A 09-036 ("SSA Q&A 09-036"), which describes Listing 11.03 as most analogous to migraine headaches because, inter alia, it considers "alteration of awareness or loss of consciousness" and/or "significant interference with activity during the day." ECF No. 11-1 (Pl.'s Br., Ex, A).

In SSA Q&A 09-036, the Social Security Administration recognized that although "migraine headaches will rarely prevent a person from working for a continuous 12 months, . . . there are exceptions," and, in the case of migraines, 11.03 is "the most analogous listing for considering medical equivalence." ECF No. 11-1, at 3. District courts within this circuit generally have agreed that that Listing 11.03 is the most analogous listing for migraine headaches. See, e.g., Means v. Colvin, 2:15-cv-01107-TFM, 2016 WL 3386814, at *6 (W.D. Pa. June 20, 2016); Kulbacki v. Colvin, Civil Action No. 2:15-297, 2016 WL 2609984, at *6 (W.D. Pa. May 6, 2016). Listing 11.03, in effect at the time of the administrative hearing, provided as follows:

> 11.03 Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Part 404, Subpart P, App'x 1, § 11.03.[2]  In SSA Q&A 09-036, the SSA reviewed the essential components of listing 11.03 as they may relate to migraine headaches.  Among other things, the SSA noted that the requirement of occurrence "in spite of at least 3 months of prescribed treatment" was inapplicable to migraines because "unlike treatment for epilepsy, which seeks to maintain a steady level of medication in the blood, there is no such standard of care in the treatment of migraine headaches."  ECF No. 11-1, at 3-4.  In addition, "it is not necessary for a person with migraine headaches to have alteration of awareness as long as s/he has an effect . . . that significantly interferes with activity during the day."  Id. at 4.  "Significant interference with activity during the day" has the "[s]ame meaning as in listing 11.03" and "[m]ay be the result, e.g., of a need for a darkened, quiet room, lying down without moving, or a sleep disturbance that impacts on daytime activities."  Id.

The Court of Appeals for the Third Circuit has held that an ALJ must provide an explanation of her reasoning at step three in order for courts to engage in meaningful judicial review.  See Burnett v. Commissioner of Social Security, 220 F.3d 112, 119-20 (3d Cir. 2000) (holding that an ALJ's bare conclusory statement that an impairment did not match, or was not equivalent to, a listed impairment was insufficient).  Subsequent Court of Appeals decisions have clarified, however, that the ALJ's failure to cite a specific Listing at step three is not fatal provided that the ALJ's review of the record permits meaningful review of the step-three conclusion.  See

---

[2] On July 1, 2016, the Social Security Administration revised the listings criteria used to evaluate disability claims involving neurological disorders, including section 11.00, effective September 29, 2016.  81 Fed. Reg. 43048-01.  The SSA explained that it will use the new listings "on and after their effective date in any case in which [it makes] a determination or decision."  Id. at n.6.  The SSA clarified, however, that it expects "that Federal courts will review the Commissioner's final decisions using the rules that were in effect at the time [it] issued the decisions."  Id.  "If a court reverses the Commissioner's final decision and remands a case for further administrative proceedings after the effective date of the final rule, [the SSA] will apply the final rule to the entire period at issue in the decision [it makes] after the court's remand."  Id.  Under the revised listings, 11.03 no longer exists as a substantive listing.  Current administration guidance, however, suggests that revised listing 11.02.D.1 (Epilepsy, Dyscognitive seizures) is analogous.  See POMS DI 24505.015, § B.7.b (second example) (current as of May 31, 2017).

Jones v. Barnhart, 364 F.3d 501, 503-05 (3d Cir. 2004); Lopez v. Comm'r of Soc. Sec., 270 F. App'x 119, 121-22 (3d Cir. 2008). As the Court of Appeals explained in Jones:

> Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review. In this case, the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that Jones did not meet the requirements for any listing, including Listing 3.02(A).

364 F.3d at 504-05 (citations omitted); see also Lopez, 270 F. App'x at 122 ("[A]lthough a discussion of the specific applicable Listings certainly would have been helpful, our primary concern always has been our ability to conduct meaningful judicial review.").

Here, it is undisputed that the ALJ did not expressly address Listing 11.03 or Plaintiff's headaches in her step three analysis. Thus, the issue is whether her decision, read as a whole, nevertheless illustrates that she considered the appropriate factors in reaching her conclusion that Plaintiff did not meet the requirements of any listing, including Listing 11.03. After careful consideration, I find that it does not. As an initial matter, although the failure to cite a specific listing is not dispositive, the fact that the ALJ explicitly cited the visual listings relevant to Plaintiff's lateral nystagmus and listings 12.04 and 12.06 related to her mental impairments lends credence to Plaintiff's argument that the ALJ never contemplated listing 11.03, or any other listing relevant to Plaintiff's headaches, either at step three or elsewhere in her analysis. Moreover, and in any event, the decision, read as a whole, does not demonstrate that the ALJ addressed the pertinent 11.03 factors. Although Plaintiff was never formally diagnosed with migraines, she saw her treating neurologist, Dr. Cotugno, regularly for chronic headaches with some associated migraine characteristics such as greater than moderate pain and photophobia. See, e.g., ECF No. 8-13, Ex. 13F; SSA Q&A 09-036. In addition, Plaintiff testified that her headaches occurred more than once weekly and had effects, *i.e.*, the need for a darkened room and/or lying down without

7

moving, that impacted on her daytime activities. See SSA Q&A 09-036 (explaining essential components of listing 11.03 as they may relate to migraines). Although this evidence does not require a finding that Plaintiff's headaches medically equaled listing 11.03, the ALJ's failure to discuss Plaintiff's alleged headache symptoms in the context of the listings precludes meaningful judicial review of this issue and requires remand.

**C.  Headaches – RFC Analysis**

Plaintiff argues that the ALJ's RFC finding is deficient because, despite finding her headaches to be a severe impairment, the ALJ failed to include any headache related limitations in the RFC finding, including her alleged need to take a break or decreased functioning when a headache occurs. [ECF No. 11, at 7-10]. After careful review of the record, including the documentary evidence, the ALJ's opinion, and the hearing testimony, I agree that remand is necessary on this issue.

An ALJ must base her RFC assessment on all of the relevant evidence of record. 20 C.F.R. § 404.1545(a). In her opinion, the ALJ must provide sufficient explanation of her final determination to provide the reviewing court with the benefit of the factual basis underlying the ultimate disability finding. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). That is, the ALJ's decision must allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008); see also Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) (the ALJ's decision should allow the reviewing court the ability to determine if "significant probative evidence was not credited or simply ignored").

Here, the ALJ found Plaintiff's headaches to be a severe impairment, and noted some of Plaintiff's headache-related complaints. [ECF No. 8-2, at 25, 27-30]. For example, the ALJ cited Plaintiff's testimony that she experiences frequent headaches that occur 2-3 times a week,

at any time, with no known trigger; that she takes Imitrex and over-the-counter Advil for her headaches; and that, as a result of her headaches, she has to lie down to nap for about an hour. Id. at 27. The ALJ also acknowledged Plaintiff's testimony that her headaches are about a 7 or 8 out of 10 in terms of pain, but that, after some time, her medications relieve the pain. Id. Although some of the limitations the ALJ incorporated in her RFC finding arguably may relate to Plaintiff's headaches, such as the need to avoid excessive vibration, it is impossible to know for certain, because the ALJ failed to explain the connection, if any, between Plaintiff's headaches and the limitations in the RFC finding. See id. at 26-32. Although this is not a case in which the ALJ failed to discuss the record evidence relating to Plaintiff's headache complaints, including the records from Plaintiff's treating neurologist, Dr. Cotugno, other deficiencies in the ALJ's analysis contribute to the ambiguity regarding which, if any, limitations in the RFC pertain to Plaintiff's headaches and require remand in this case.

My first concern involves the ALJ's treatment of Plaintiff's activities of daily living. In her opinion, the ALJ attempted to discredit Plaintiff's claim that she was unable to work by stating that her self-reported activities of daily living "belie her assertions of disability." Id. at 28, 30. These activities of daily living included: watching television, listening to the radio, reading, dressing and bathing herself, walking a mile in 20 minutes during the day, carrying up to 20 pounds when grocery shopping and cooking, washing dishes, making her bed, vacuuming, sweeping, mopping, taking out the trash, doing other housework, and taking care of her ten-year-old son. Id. In discussing these activities of daily living, however, the ALJ "failed to mention the rigor or frequency of these activities as performed by Plaintiff." Tomassi v. Colvin, No. 2:12-cv-01354, 2013 WL 5308021, at *15 (W.D. Pa. Sept. 20, 2013). Courts examining headache-related disability claims have recognized that, although a claimant may be able to perform normal tasks when not experiencing a headache, headaches are often episodic in nature and, thus, may affect

9

the claimant's ability to work on a regular, sustained basis. See Means, 2016 WL 3386814, at *7. Here, however, the ALJ failed to address the possible attendance issues Plaintiff may face due to her episodic headache symptoms, in particular, her testimony that she experiences headaches 2-3 times a week; that the headaches can come on at any time during the day; and that she has to lie down and/or take a nap up to 3-4 times a day when she has a headache. See ECF No. 8-3, at 43-57. Thus, I am unable to determine whether (and, if so, why) the ALJ chose to discredit that testimony in making her RFC finding. This omission is especially important here, where the VE testified that there would not be any jobs available for an individual who would be absent two or more days per month. Id. at 64-65.

Second, the ALJ cited the medical records from Plaintiff's primary care physician, Dr. Sharer, in support of her conclusion that the medical evidence of record did not support a finding of disabling functional limitations due to headaches. [ECF No. 8-2, at 29-30]. In so doing, the ALJ noted a number of occasions on which Plaintiff saw Dr. Sharer for other ailments such as ankle pain following a fall, dizziness, and a racing heart, but did not report any headaches. Id. (citing Ex. 11F). As I have cautioned previously, however, "the fact that a claimant 'did not always mention, or her physicians did not always take the time to note, [headaches] during visits to treat other ailments does not necessarily mean her complaints were insincere.'" Grimes v. Berryhill, Civil Action No. 15-1557, 2017 WL 746798, at *3 (W.D. Pa. Feb. 27, 2017) (Ambrose, J.) (quoting Kulbacki, 2016 WL 2609984, at *8). Indeed, where, as here, Plaintiff sought treatment specifically for her headaches with a neurologist over an extended period of time, "it is unremarkable that her [headaches] were not noted in every single doctor visit for her extensive and unrelated health problems." Kulbacki, 2016 WL 2609984, at *8.

In short, although substantial evidence supports some aspects of the ALJ's decision, I am unable to determine whether she would have reached the same conclusions regarding Plaintiff's

10

abilities had she properly addressed the above concerns. For these reasons, remand is necessary. If, on remand, the ALJ again concludes that Plaintiff has the residual functional capacity to perform some work, s/he should specify in the opinion which, if any, limitations in the RFC pertain to Plaintiff's headaches.

**D.** **Mental Impairments – RFC Analysis**

Plaintiff asserts that the ALJ failed to properly evaluate her mental impairments in formulating Plaintiff's RFC. [ECF No. 11 at 11-19]. Specifically, Plaintiff argues that ALJ failed to assign appropriate weight to the opinions of her treating psychiatrist, Burton Singerman, M.D., that Plaintiff would be unable to obtain and retain competitive employment due to her mental limitations and that she was unable to work even on a part-time basis with memory and reasoning problems. Id. (citing ECF No. 8-11, Ex. 9F; ECF No. 8-13, Ex. 14F). This argument is without merit.

The amount of weight afforded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1).[3] In addition, the ALJ generally will give more weight to opinions from a treating physician "since these sources are likely to be the medical professionals most able to provide a detailed longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic

---

[3] Although the regulations governing the evaluation of medical evidence were recently amended, the version effective March 27, 2017, does not apply to the present claim. See 20 C.F.R. § 416.927 (2017); 20 C.F.R. § 416.920c (2017).

techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. Id. Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." Id. § 416.927(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)). However, "where ... the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Soc. Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or the wrong reason." Diaz v. Comm'r of Soc. Security, 577 F.3d 500, 505 (3d Cir. 2009).

Here, the ALJ here gave little weight to Dr. Singerman's November 5, 2013 and October 2, 2014, functional assessments because, inter alia, they were contradicted by Dr. Singerman's own treatment records; and were unsupported by medically acceptable clinical and laboratory diagnostic techniques, with the record indicating only limited and sporadic mental health treatment. [ECF No. 8-2, at 30-32]. The discrepancies the ALJ noted included Dr. Singerman's representation in November 2013 that Plaintiff's highest GAF score over the past year was 50; and in October 2014 that her highest GAF score over that past year was 35. See id. at 31 (citing Exs. 9F, 14F). These representations directly contradict the underlying treatment records which reflect GAF scores ranging from 54 once and 60 on three occasions, including a GAF score of 60 that Dr. Singerman assigned on June 19, 2014, less than four months prior to his October 2014

assertion that Plaintiff's highest GAF score in the past year was 35. See id. (citing Exs. 6F, 9F, 12F, and 14F).[4] The ALJ also detailed other ways in which the underlying treatment records failed to support Dr. Singerman's functional limitations. For example, the ALJ noted that, during her June 19, 2014 appointment, Plaintiff reported feeling overwhelmed with her son, and exhibited abnormal affect, with dysthymic, depressed, and anxious mood; but that her thought content revealed no impairment, her insight was intact, and examination revealed no paranoid ideations, no delusions, no suicidal ideation, no hallucinations, no perceptual disturbances, unimpaired memory and judgment, good concentration, and no learning disability. Id. (citing Ex. 12F). The ALJ gave significant weight to the functional assessment of state non-examining psychologist, Melissa Diorio, who examined the medical evidence of record as of August 2013 and found that Plaintiff had no worse than moderate limitations related to her mental health impairments. See id. (citing Ex. 1A). The ALJ also included restrictions in her RFC finding related to Plaintiff's credibly-established mental health impairments, including a limitation to routine, repetitive tasks performed in a work environment free from fast-paced production requirements, involving only simple work-related decisions, and routine workplace changes; and

---

[4] The GAF scale is used by clinicians to report an individual's overall level of functioning. See Cainglit v. Barnhart, 85 F. App'x 71, 74-75 (10th Cir. 2003). A GAF of 21-30 indicates behavior that "is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment . . . OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)." See American Psychiatric Assoc. Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Rev. 2000) ("DSM-IV-TR"). A GAF of 31-40 indicates "some impairment in reality testing or communication . . . OR major impairment in several areas such as work or school, family relations, judgment, thinking, or mood." Id. A GAF of 41-50 denotes "serious symptoms (e.g., suicidal ideation . . . ) . . . OR any serious impairment in social, occupational, or school functioning." Id. A GAF from 51-60 indicates "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." Id. A GAF from 61-70 reflects "some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful relationships." Id. Plaintiff's argument that GAF scores are not probative of disability is unpersuasive under the facts of this case. The weight of GAF scores in general does not undercut the importance in this case of the clear contradiction between Plaintiff's GAF scores as represented in Dr. Singerman's functional capacity statements and the actual GAF scores contained in the underlying treatment notes. This contradiction in itself is sufficient to cast doubt on Dr. Singerman's opinions.

work isolated from the public, with only occasional supervision and only occasional interaction with co-workers.  Id. at 26.

In short, I find the ALJ appropriately weighed Dr. Singerman's opinions and other evidence of record in evaluating Plaintiff's mental health impairments and that she supported her findings with substantial evidence.  Accordingly, I find no error in this regard requiring remand on this issue alone.  In light of my ruling regarding Plaintiff's headaches, however, the ALJ must revisit this issue on remand.  If the ALJ's findings regarding Plaintiff's headaches (or any other impairments change), s/he must re-assess whether Plaintiff's physical and mental impairments, in combination, create disabling limitations.

### III.    CONCLUSION

Under the Social Security regulations, a federal district court reviewing the decision of the Commissioner denying benefits has three options.  It may affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration.  42 U.S.C. § 405(g) (sentence four).  In light of an objective review of all evidence contained in the record, I find that the ALJ's decision is not supported by substantial evidence because, in discussing the Listings and her RFC and credibility findings, the ALJ failed to adequately address Plaintiff's headaches as set forth more fully herein.  The case therefore is remanded for further consideration in light of this Opinion.  For these and all of the above reasons, Plaintiff's Motion for Summary Judgment is granted to the extent set forth herein, and Defendant's Motion for Summary Judgment is denied.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BARBARA R. BOERGER, )
)
    Plaintiff, )
)
vs. ) Civil Action No. 2:16-1095
)
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security,[1] )
)
    Defendant. )
)

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 27th day of June, 2017, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Plaintiff's Motion for Summary Judgment [ECF No. 10] is GRANTED to the extent that Plaintiff seeks remand for further consideration, and the matter is REMANDED to the Commissioner for further proceedings consistent with the Opinion attached hereto. Defendant's Motion for Summary Judgment [ECF No. 14] is DENIED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).